# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                                   Criminal No. 07-228 (JNE/SRN)

    Plaintiff,

  v.                                                              <u>REPORT AND RECOMMENDATION</u>

Adolfo Valenzuela-Valenzuela, David
Grajeda-Barreras, and Benjamin
Estrada-Alvarez,

    Defendants.

_____

   Kimberly Svendsen and Michael Cheever, Office of the United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff

   Robert G. Davis, Robert G. Davis Law Office, 270 North Grain Exchange Building, 301 Fourth Avenue South, Minneapolis, Minnesota 55415, for Defendant Adolfo Valenzuela-Valenzuela

   Jeffrey C. Degree, Degree Law Office, 212 Third Avenue North, Suite 545, Minneapolis, Minnesota 55401, for Defendant David Grajeda-Barreras

   Manvir K. Atwal, Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, Minnesota 55415, for Defendant Benjamin Estrada-Alvarez

_____

SUSAN RICHARD NELSON, United States Magistrate Judge

   The above-captioned case comes before the undersigned United States Magistrate Judge on Defendant Adolfo Valenzuela-Valenzuela's Motion to Suppress (Doc. No. 33), Defendant David Grajeda-Barreras's Motion to Suppress (Doc. No. 37), and Defendant Benjamin Estrada-Alvarez's Motion to Suppress (Doc. No. 23).  This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

I.      **BACKGROUND**

An Indictment was filed on June 27, 2007, charging all Defendants in Count 1 with conspiring

to possess with intent to distribute and to distribute 500 grams or more of a mixture and substance

containing methamphetamine.  (Doc. No. 12.)  Count 2 charges Defendants Valenzuela-Valenzuela and

Estrada-Alvarez with distribution of methamphetamine.  Count 3 charges Defendant Estrada-Alvarez

with possession with intent to distribute methamphetamine.  Count 4 charges Defendant Grajeda-

Barreras with possession with intent to distribute cocaine. Count 5 charges Defendant Grajeda-

Barreras with possession with intent to distribute methamphetamine and cocaine.

This Court held a pretrial motions hearing on July 30, 2007.  United States Customs and

Immigration Services (USCIS) Special Agents John Smithberg and Travis Hamblen testified at the

hearing, and the following exhibits were received in evidence:

> Gov't Ex. 1: an application, supporting affidavit, search warrant, receipt, inventory, and return
>
> for a trailer house at 43488 County 1 Boulevard in Wanamingo, Minnesota; and
>
> Def. Ex. 1: a visual recording of a controlled buy on April 4, 2007.

II.     **FACTS**

The following facts were elicited at the pretrial motions hearing.  On April 4, 2007, Special

Agent Smithberg arranged for a controlled buy between a confidential informant (CI) and Defendant

Valenzuela-Valenzuela.  The CI called Defendant Valenzuela-Valenzuela from the Plainview police

station and scheduled the meeting.  Law enforcement officers were stationed at the Plainview apartment

complex where Defendant Valenzuela-Valenzuela lived, as well as at a farm in Wanamingo, Minnesota.

Officers saw Defendant Valenzuela-Valenzuela leave the farm in a red Ford Explorer with another

person, who was later identified as Defendant Estrada-Alvarez.  Officers followed the Explorer to Defendant Valenzuela-Valenzuela's apartment complex, where the CI was waiting.  The CI was wearing a wire during the transaction, and the transaction was also visually recorded.  Officers saw Defendant Valenzuela-Valenzuela leave his vehicle and approach the CI's vehicle.  The CI and Defendant Valenzuela-Valenzuela spoke in Spanish, and Defendant Valenzuela-Valenzuela sold an ounce of methamphetamine to the CI.

Defendant Valenzuela-Valenzuela returned to the Explorer and apparently handed the money to Defendant Estrada-Alvarez.  The two men walked toward the apartment complex together and presumably went inside.  A short time later, Defendants Valenzuela-Valenzuela and Estrada-Alvarez left the complex and got back into the Explorer.  Officers followed them back to the Wanamingo farm. Meanwhile, the CI left the apartment complex, met with officers at a predetermined location, and turned over the half ounce of methamphetamine.

On June 6, 2007, law enforcement officers set up a controlled buy and bust with the same CI. That morning, USCIS agents and Plainview police officers met outside of the Plainview police station. Defendant Valenzuela-Valenzuela drove by the station in the red Explorer, and one of the investigators recognized him.  About an hour later, the CI came to the station and made a consensual telephone call to Defendant Valenzuela-Valenzuela to schedule the transaction.  Defendant Valenzuela-Valenzuela said he had two people with him, one of whom owned the drugs.  When the CI said he wanted to buy more methamphetamine than he had the previous time, Defendant Valenzuela-Valenzuela said they would have to go to the farm in Wanamingo to get the additional amount.  Surveilling officers watched the Explorer leave the Plainview apartment complex with Defendant Valenzuela-Valenzuela and two

other people inside. Officers trailed the Explorer as Defendant Valenzuela-Valenzuela drove to the Wanamingo farm. At the farm, all three individuals went into the trailer house and then returned to the Explorer. Defendant Valenzuela-Valenzuela then drove back to the town of Plainview. Defendant Grajeda-Barreras was in the front passenger seat, and Defendant Estrada-Alvarez was sitting in the back seat. A Goodhue County Sheriff's deputy was standing by, and he was instructed to stop the vehicle because of the suspected narcotics transaction underway.

The Goodhue County deputy approached the Explorer and attempted to communicate with Defendants, but they did not speak any English. Defendants all produced Mexican identification cards. The deputy then motioned to USCIS Special Agent Hamblen, who was at the scene to assist in the narcotics investigation, and in case Defendants were determined to be illegal aliens. Special Agent Hamblen approached the passenger side of the car and saw that all three Defendants were holding Mexican identification cards. After identifying himself as a USCIS agent, he then briefly questioned Defendants in Spanish. At the motions hearing, he did not recall the order in which he spoke to Defendants. He first asked where they were from, and second, how they entered the United States. Each Defendant told Special Agent Hamblen that he was not lawfully in the United States, and that he had entered by jumping a border fence. Due to Defendants' admitted illegal immigration status, the agents then removed Defendants from the car, arrested them, and searched them incident to arrest. Officers found two grams of cocaine in Defendant Grajeda-Barreras's shirt pocket and an unspecified amount of narcotics on Defendant Estrada-Alvarez's person.

Defendants were transported to jail where they were booked and interviewed. Officers subsequently obtained a search warrant for the trailer house based primarily on the evidence seized as a

result of the traffic stop.  Officers seized drugs, items associated with selling drugs, a handgun, and

ammunition from the trailer home.

## III.     DISCUSSION

All three Defendants move to suppress evidence seized as a result of the vehicle stop.

Defendant Estrada-Alvarez also moves to suppress evidence seized from the trailer house pursuant to

the search warrant.

### A.     The Stop of the Explorer

In <u>Terry v. Ohio</u>, the United States Supreme Court held that a law enforcement officer may

stop, briefly detain, and question a person based on a reasonable suspicion of ongoing criminal activity.

392 U.S. 1, 20-24 (1968).  The officer must have a reasonable and articulable suspicion of criminal

activity in order to conduct this type of investigatory detention, <u>id.</u> at 21-22, which has come to be

known as a <u>Terry</u> stop.  A reasonable, articulable suspicion means that there are specific and articulable

facts, and rational inferences drawn from those facts, reasonably suggesting that criminal activity has

occurred or is imminent.  <u>Id.</u> at 21.  An officer may rely on the information known by a team of officers

involved in an investigation to provide justification for the stop.  <u>United States v. Ortiz-Monroy</u>, 332

F.3d 525, 529 (8th Cir. 2003) (citing <u>United States v. Robinson</u>, 119 F.3d 663, 666-67 (8th Cir.

1997)).

If the suspect is in a moving vehicle, a traffic violation is not required in order to justify the stop.

An officer may "briefly stop a moving automobile to investigate a reasonable suspicion that its

occupants are involved in criminal activity."  <u>United States v. Hensley</u>, 469 U.S. 221, 226 (1985);

<u>accord</u> <u>United States v. Winters</u>, — F.3d —, 2007 WL 2141685, at **2-3 (8th Cir. 2007).

In the present case, the Goodhue County deputy pulled over the Explorer based on a reasonable and articulable suspicion that the occupants were in the process of transporting methamphetamine to sell to the CI.  This suspicion was based on information known to the team of officers involved in the investigation.  Namely, officers knew that Defendant Valenzuela-Valenzuela had previously sold methamphetamine to the CI, and that the CI had arranged to buy more methamphetamine from Defendant Valenzuela-Valenzuela that day in a controlled situation.  Officers also knew that Defendant Valenzuela-Valenzuela's procedure was to drive to the trailer house in Wanamingo, where the methamphetamine was presumably located, obtain the drugs, and return to his apartment complex to conduct the actual transaction.  Any suspicion by law enforcement agents that Defendants might also be illegal aliens did not negate the legitimate basis for stopping the car. See Whren v. United States, 517 U.S. 806, 813 (1996).  The Court concludes that the Terry stop effected by the Goodhue County deputy was lawful.

The Goodhue County deputy approached the Explorer and immediately ascertained that the passengers did not speak English.  Defendants also produced Mexican identification cards. These circumstances added to the existing suspicion of law enforcement agents that the men were illegal aliens. If responses to questions and the surrounding circumstances raise suspicions unrelated to the reason for the initial stop, "an officer may broaden his inquiry and satisfy those suspicions."  United States v. Ward, 484 F.3d 1059, 1062 (8th Cir. 2007) (quoting United States v. Johnson, 58 F.3d 356, 357 (8th Cir. 1995)).  Accordingly, at that point, the Goodhue County deputy properly broadened his inquiry beyond the suspected narcotics violation to satisfy his suspicion about Defendants' immigration status.  As the deputy did not speak Spanish, he motioned to Special Agent Hamblen for assistance.

6

Special Agent Hamblen initially asked two questions to Defendants: where they were from, and how they entered the United States. All three Defendants contend that Special Agent Hamblen should have advised them of their rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), before asking these questions.

Ordinarily, individuals temporarily detained during a Terry stop "are not 'in custody' for the purposes of Miranda." Berkemer v. McCarty, 468 U.S. 420, 440 (1984). A Miranda warning is required only when a "suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" Id. (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam)). In Berkemer, the Court considered the short amount of time between the stop and the arrest, the fact that the officer did not tell the suspect that the detention would not be temporary, and the "modest number of questions" asked to determine that the Terry stop was not transformed into a formal arrest thereby requiring a Miranda advisory. Id. at 441-42. The relevant facts of this case are comparable to Berkemer. Only a few minutes passed between the stop and the arrests. Defendants had no reason to believe that the detention was not temporary, and neither the Goodhue County deputy nor Special Agent Hamblen told them otherwise. Special Agent Hamblen asked only two questions before determining that probable cause existed to arrest Defendants for immigration violations.

On facts similar to the present case, the Eighth Circuit Court of Appeals held in United States v. Pelayo-Ruelas, 345 F.3d 589 (8th Cir. 2003), that a Miranda warning was not required during a Terry stop. In that case, an informant advised DEA agents that a tan Camry with two occupants would be transporting a large amount of methamphetamine at a certain time. Id. at 590-91. An agent pulled over the car at the specified time and identified himself as a DEA agent. Id. at 591. In response to routine

questioning, the driver produced an identification card and said he was in the United States illegally.  Id.

The agent asked the driver to exit the car, patted him down for weapons, and continued asking him

questions regarding his presence in Minnesota.  Id.  After observing suspicious tools in the back seat of

the car, the agent asked for and obtained the driver's consent to search the car.  Id.  Relying on

Berkemer, the Eighth Circuit Court of Appeals found that the driver was not in custody so as to trigger

Miranda.  Id. at 592.  The court noted in particular that only one agent approached the vehicle, and he

did not draw his weapon.  Id. at 593.  Moreover, even though the agent had probable cause to arrest

the driver after he admitted to being an illegal alien, he properly continued to question the driver about

the suspected drug trafficking.  Id.  The changed purpose of the detention did not make the detention

custodial.  Id.  at 592.  The pivotal question was whether the agent restrained the driver's movements

to an extent commensurate with a formal arrest.  Id. at 593.

Although the Pelayo-Ruelas court considered several factors pertinent to the driver's custodial

status, it did not explicitly list the "indicia of custody" often used to aid courts in determining whether a

Miranda warning was required, which are:

> (1) whether the suspect was informed at the time of questioning that the questioning was
> voluntary, that the suspect was free to leave or request the officers to do so, or that the
> suspect was not considered under arrest; (2) whether the suspect possessed
> unrestrained freedom of movement during questioning; (3) whether the suspect initiated
> contact with authorities or voluntarily acquiesced to official requests to respond to
> questions; (4) whether strong arm tactics or deceptive stratagems were employed
> during questioning; (5) whether the atmosphere of the questioning was police
> dominated; or, (6) whether the suspect was placed under arrest at the termination of the
> questioning.

United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990).  An application of the Griffin factors to

the case at hand further demonstrates that the investigatory detention of Defendants during Special

Agent Hamblen's brief questioning was not equivalent to a formal arrest.  Special Agent Hamblen used

no strong-arm tactics or deceptive stratagems.   He never told Defendants that they were under arrest,

and he did not draw his weapon.  The questioning was extremely brief, and Defendants voluntarily

answered the questions.  Defendants were permitted to remain in their car.  Although other officers

were at the scene, only Special Agent Hamblen and the Goodhue County deputy were standing outside

of the Explorer.  The only factors favoring a finding of custody were that Defendants were arrested at

the termination of the questioning, and that Defendants were not explicitly told that the questioning was

voluntary or that they were free to leave.  Considering all of the circumstances surrounding the stop, the

Court concludes that no Miranda warnings were required before questioning Defendants because their

freedom of movement was not limited to a degree tantamount to a formal arrest.

Defendants' lack of documentation and their answers to Special Agent Hamblen's questions

established probable cause to arrest them for immigration violations, and Defendants were lawfully

searched incident to arrest.  Accordingly, Defendants' motions to suppress evidence seized as a result

of the vehicle stop should be denied.[1]

---

[1] Defendants urge the Court to heed certain dictum in United States v. Hernandez-Hernandez, 384 F.3d 562 (8th Cir. 2004).  In addressing whether a subsequent Miranda warning purged the taint of an illegal arrest, the Eighth Circuit presumed in dictum that initial questioning by a state trooper exceeded the scope of a traffic stop.  Id. at 563-64.  The Court declines to apply the Hernandez-Hernandez dictum to this case.  First, dicta is not binding, and in this case, it is not even persuasive, considering that the court did not discuss or rule on the propriety of the initial questioning.  Indeed, the court stated, "As for the completeness and detail of the questions and answers in the first round of questioning, we have no record of the questions asked . . . ."  Id. at 566.  Second, the Court has found in the present case that law enforcement officers not only had a reasonable and articulable suspicion that Defendants were in the process of transporting drugs as part of an ongoing drug deal, but also that the suspicion of criminal activity expanded during the detention to encompass possible immigration violations.  Thus, the officers in this case did not exceed the permissible scope of the detention as the

9

B.      The Search Warrant

Defendant Estrada-Alvarez moves for the suppression of evidence seized pursuant to the search warrant for the trailer house at 43488 County 1 Boulevard in Wanamingo, Minnesota.  When an issuing court relies solely on an affidavit to determine whether probable cause exists for a warrant, the reviewing court may consider "only that information which is found within the four corners of the affidavit . . . in determining the existence of probable cause."  United States v. Leichtling, 684 F.2d 553, 555 (8th Cir. 1982).  Upon reviewing the affidavit in the present case, the Court finds that it established probable cause for the warrant.  The affidavit recounted the investigation, the controlled buy on April 4, 2007, and the arrests on June 6, 2007.  The affidavit included information tying the illegal activities with the trailer home.  The information set forth in the affidavit was more than sufficient to support the issuing judge's determination that probable cause existed to search the trailer home.  See Illinois v. Gates, 462 U.S. 213, 238-39 (1983).  Defendant Estrada-Alvarez's motion to suppress evidence seized pursuant to the search warrant should be denied.

Based on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      Defendant Adolfo Valenzuela-Valenzuela's Motion to Suppress (Doc. No. 33) be

        **DENIED**;

2.      Defendant David Grajeda-Barreras's Motion to Suppress (Doc. No. 37) be

_____

trooper in Hernandez-Hernandez apparently did.

**DENIED**; and

3.      Defendant Benjamin Estrada-Alvarez's Motion to Suppress (Doc. No. 23) be

**DENIED**.


Dated:  August 21, 2007

                                        s/ Susan Richard Nelson
                                        SUSAN RICHARD NELSON
                                        United States Magistrate Judge


Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **September 6, 2007,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.

11